```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION


FIRST SPECIALTY INSURANCE
CORPORATION,

                 Plaintiff,

vs.                                  Case No.  2:04-cv-461-FtM-33SPC

NORTHLAKE FOODS, INC., d/b/a/
Waffle House, and WILLIAM DUNN,

                 Defendants.
_____
```

**ORDER**

This matter comes before the Court on Petitioner First Specialty Insurance Co.'s Motion in Limine on Duty to Defend (Doc. # 72). Respondent has filed a Consolidated Memorandum in Opposition to Petitioner's Motion in Limine (Doc. # 80).

In its motion in limine, First Specialty argues that the pollution exclusion contained in its policy negated any duty to defend in the underlying action. (Doc. # 72-3, p. 8). The pollution exclusion to which First Specialty refers states that the policy of insurance does not apply to

> "Bodily injury," "property damage," "personal injury," or "advertising injury" caused by or arising out of, in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time.

(Doc. # 72-2). The word "pollutants" is defined as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals, and waste."

1

(Doc. # 72-2).

In Northake's Consolidated Memorandum in Opposition to Petitioner's Motions in Limine (Doc. # 80-1), Nortlake contends that carbon monoxide does not fall within the pollution exclusion. (Doc. # 80-1, pp. 13-17). It argues that this Court should apply Georgia law, and should ignore Florida law. (Doc. # 80-1, p. 14).[1] First Specialty does not believe that a conflict of law exists, and argues that Florida law may be applied as a result. (Doc. # 72-3, p. 2).

Assuming that Georgia law should apply, this court first looks to the decisions of that state's highest court. The Georgia Supreme Court has not decided the issue of whether carbon monoxide is a pollutant for the purposes of an insurance policy's pollution exclusion. The Georgia court treated the issue of pollution exclusions in Claussen v. Aetna Casualty & Surety Co., where the court held that the word "sudden" in the context of the exclusion was ambiguous. 380 S.E.2d 686, 688 (Ga. 1989). The pollution exclusion in Claussen is distinguishable from the one in the First Specialty insurance policy in several ways. Most importantly, the

---

[1] Northlake argues that Georgia law governs this dispute because in Florida, a contract is governed by the law of the state where the last act necessary to complete the contract is done. See Equitable Life Ass. Soc'y of the U.S.A. v. McRee, 78 So. 22, 24 (1918). Given that the last act necessary to complete a contract of insurance is the place of delivery of the policy binder, and in this case the binder was delivered in Georgia, then Georgia law applies. See Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1093 (11th Cir. 2004); Roach v. State Farm Mut. Auto. Ins. Co., 892 So. 2d 1107 (Fla. App. 2004).

Claussen exclusion stated that the "exclusion does not apply if [the] discharge, dispersal, release or escape [of pollutants] is *sudden and accidental*." Id. at 687 (emphasis added). This clause in the exclusion became the focus of the Claussen opinion, and it was ultimately the portion of the exclusion that the Georgia Supreme Court found to be ambiguous. Id. No such clause exists in the First Specialty pollution exclusion, and there is no requirement that the pollutants be discharged, or otherwise released suddenly or accidentally. (See Doc. # 72-2). For that reason alone, the Claussen case fails to provide a great deal of guidance.

The First Specialty exclusion differs from the Claussen exclusion in other ways as well. For example, the Claussen exclusion's language is more directed at the release of pollutants outdoors. See Claussen, 380 S.E.2d at 687 ("discharge, dispersal, or release or escape . . . into or upon land, the atmosphere or any water course or body of water"). In contrast, the First Specialty policy does not specify where, when, or how the pollutants must be released in order for the injury to be excluded. In sum, the First Specialty policy exclusion is a different type of policy exclusion, apparently written to encompass a broader spectrum of injuries and damages than the Claussen exclusion.

While Claussen is distinguishable from the case at hand because the language and scope of the First Specialty exclusion is broader, Claussen does provide an excellent starting point for this Court's analysis. Simply put, Claussen held that the specific

3

phraseology "sudden and accidental" was ambiguous; it did not hold that the entire pollution exclusion was ambiguous. <u>Id.</u> at 687-88. Based on this, and in the absence of any holding to the contrary, this Court must assume that the Georgia court, if faced with the issue of whether a pollution exclusion is ambiguous in its totality, would hold in the negative and find that pollution exclusions in general are not ambiguous.

<u>Claussen</u> is the only Georgia Supreme Court case that addresses a pollution exclusion. There are no Georgia Supreme Court cases that address whether carbon monoxide falls within an insurance policy's pollution exclusion. As stated in <u>Pennsylvania Glass Sand</u>,

> [i]n the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court will rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis.

<u>Pennsylvania Glass Sand v. Caterpillar Tractor Co.</u>, 652 F.2d 1165, 1167 (3d Cir. 1981).

Given that this Court is tasked with predicting how the Georgia Supreme Court would rule, the analysis logically begins with the rulings of Georgia appellate courts that have addressed the issue. While none have specifically addressed carbon monoxide as a pollutant, the Court of Appeals of Georgia held that it was not necessary for a pollution exclusion to specifically list every

4

pollutant to which it would apply. <u>Truitt Oil & Gas Co. v. Ranger Ins. Co.</u>, 498 S.E.2d 572, 574 (Ga. Ct. App. 1998). In <u>Truitt</u>, the court was asked to determine whether gasoline was a pollutant. <u>Id.</u> at 573. In analyzing the question, the court seemed to place significance on the policy's definition of "pollutants." <u>Id.</u> at 574. The policy's definition stated that a pollutant included "any liquid or gaseous contaminant." <u>Id.</u> The court noted that gasoline was defined as "a volatile flammable liquid hydrocarbon mixture blended from natural gas and petroleum" and concluded that gasoline was a pollutant within the meaning of the policy's exclusion. <u>Id.</u>

Applying a similar analysis to this case, this Court notes that according to the First Specialty policy, a "pollutant means *any* solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals, and waste." (Doc. # 72-2)(emphasis added). Webster's Dictionary defines carbon monoxide as a highly poisonous gas. Webster's New World Dictionary 213 (2d ed. 1970). Furthermore, this Court takes judicial notice that the federal government has classified it as a pollutant. 42 U.S.C.A. § 7476.

Another Georgia court, albeit a federal one, rejected the argument that pollution exclusions are intended only to relieve insurance companies from "massive environmental cleanups required by CERCLA and similar legislation." <u>Owners Ins. Co. v. Angel Farmer</u>, 173 F. Supp. 2d 1330 (N.D. Ga. 2001)(citing with disfavor <u>Kent Farms v. Zurich Ins. Co.</u>, 998 P.2d 292, 294 (Wash. 2000)). The court disagreed with this common argument against the

application of pollution exclusions because the insurance policy at hand in that case contained "no indication of the insurer's intent or purpose behind the pollution exclusion. Absent such an indication, this court will not intervene to rewrite the contract." Id. As was the case with the Owners Insurance exclusion, there is no indication that First Specialty intended to limit the application of the pollution exclusion; furthermore, like the court in Owners Insurance, this Court is convinced that its role is not to rewrite the unambiguous language of a contract. Id. at 1333-34.

The Court also notes that, while the case law in this area is by no means unanimous, the cases outside the Georgia state court system in which carbon monoxide has been determined to be a pollutant are particularly persuasive. The Eleventh Circuit, analyzing a pollution exclusion under Florida law, held that injuries resulting from toxic carbon monoxide fumes emanating from a hot water heater inside a residence were not covered under an insurance policy containing a pollution exclusion. Admiral Ins. Co. v. Feit Mgmt. Co., 321 F.3d 1326, 1330 (11th Cir. 2003). Notably, the dispute in Admiral Insurance related solely to an exception to the pollution exclusion in the parties' policy. That case stated that the exclusion did not apply to any "injury or damage sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building." Id. at 1328. No such exception to the exclusion exists in the First Specialty policy. The Admiral Insurance court stated that "[t]here is no dispute that, absent the exception, the pollution exclusion

clause would exclude coverage for the injuries in this case," which were injuries resulting from carbon monoxide exposure.  <u>Id.</u> at 1328.

Similarly, the Fourth Circuit has also found that carbon monoxide was a pollutant for the purposes of a pollution exclusion. It examined a policy that defined "pollutants" to include "smoke, vapors, soot, fumes, acids, sounds, alkalies, chemicals, liquids, gases, thermal pollutants and all other irritants or contaminants" and concluded that "carbon monoxide -- whether considered a 'fume,' 'vapor,' or 'gas' -- plainly falls within this policy's definition of "pollutant." <u>Assicurazioni Generali v. Kenneth Neil</u>, 160 F.3d 997, 1000 (4th Cir. 1998). The language of the First Specialty exclusion is nearly identical to the language cited in <u>Assicurazioni Generali</u>, and this Court finds the Fourth Circuit's conclusion persuasive.

Lastly, this Court finds it particularly difficult to conclude that carbon monoxide is not a pollutant given that it has been categorized as a pollutant under Georgia's statutes. For example, section 12-9-41 of the Georgia Code refers to carbon monoxide as a pollutant, as does section 12-9-43 (referring to "allowable ambient air concentrations for pollutants, *including ozone and carbon monoxide*..."). Ga. Code Ann. §§ 12-9-41 (2005); Ga. Code Ann. §§ 12-9-43 (2005)(emphasis added). Section 12-9-57, listed under "Prevention and Control of Air Pollution," states that the State of Georgia must "maintain and enforce the inspection plan and program provided for in this article in order to reduce the ambient air

levels of ozone or carbon monoxide which exceed the levels specified by the National Ambient Air Quality Standards for such pollutants . . ." Ga. Code Ann. § 12-9-57 (2005)(emphasis added).

In conclusion, while the Court acknowledges that jurisdictions across the country have differed in their treatment of carbon monoxide under a pollution exclusion, it concludes that in this case logic dictates the outcome. The Georgia Supreme Court has not spoken on the issue, but a decision of its lower court supports this Court's conclusion. A federal district court interpreting Georgia law declined to limit the application of a pollution exclusion to those cases involving environmental clean-up efforts. The Eleventh Circuit held that injuries resulting from emanations of carbon monoxide were barred from coverage under the applicable policy's pollution exclusion. The Fourth Circuit is one example of other circuit courts that have reached similar results. Finally, both the Georgia Code and the United States Code state that carbon monoxide is a pollutant. With this in mind, this Court finds that carbon monoxide is a pollutant under the pollution exclusion contained in the First Specialty policy. Because the exclusion was applicable, First Specialty was under no duty to defend Northlake in the underlying action.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Petitioner's Motion in Limine on Duty to Defend (Doc. # 72) is hereby **GRANTED.**

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this <u>12th</u> day of October, 2005.

                                                  _____
                                                  VIRGINIA M. HERNANDEZ COVINGTON
                                                  UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record